James E. Magleby (7247)
  magleby@mcgiplaw.com
Jennifer Fraser Parrish (11207)
  parrish@mcgiplaw.com
**MAGLEBY CATAXINOS & GREENWOOD**
170 South Main Street, Suite 1100
Salt Lake City, Utah 84101
Telephone: (801) 359-9000
Facsimile: (801) 359-9011

Attorneys for Plaintiff ClearOne, Inc.

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **CLEARONE, INC., a Utah corporation,** | **COMPLAINT** |
|    **Plaintiff,** | **AND** |
| **v.** | **DEMAND FOR JURY TRIAL** |
| **RSM US LLP, an Iowa limited liability partnership,** | |
|    **Defendant.** | **Case No.  2:16-cv-736-PMW** |
| | **Honorable  Paul M. Warner** |

Plaintiff ClearOne, Inc. ("Plaintiff" or "ClearOne"), through counsel MAGLEBY

CATAXINOS & GREENWOOD, hereby complains of RSM US LLP, as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      ClearOne is a Utah corporation, with its principal place of business in Salt

Lake County, Utah.

2.      RSM US LLP, formerly McGladrey LLP ("Defendant" or "RSM"), is an Iowa

limited liability partnership, with its principal place of business in Illinois.  RSM has been

registered to conduct business in the State of Utah since August 31, 2010, at all relevant times was conducting business in Salt Lake County, Utah.

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because ClearOne and RSM are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to ClearOne's claims occurred in the district.

5.      Personal jurisdiction over RSM is proper in this Court pursuant to UTAH CODE § 78B-3-205, including because RSM is registered to do business in Utah and is doing business in Utah, RSM transacts and has transacted business in Utah, RSM contracts and has contracted to supply services in Utah, and RSM is causing and has caused injury in Utah.

**GENERAL ALLEGATIONS**

**ClearOne and ClearOne's Search for a New Auditor**

6.      ClearOne is a publicly traded company that designs, develops, and sells conferencing, collaboration, streaming, and digital signage solutions, worldwide, for audio and visual communications.

7.      As a publicly traded company, the U.S. Securities and Exchange Commission (the "SEC") requires that ClearOne's financial statements be periodically audited by an independent public accounting firm.

8.      Timely and accurate SEC filings are critical to ClearOne's business, and thus by extension the preparation of timely and accurate audited financial statements by ClearOne's independent public accounting firm are critical to ClearOne's business.

9.      Indeed, without timely and accurate financials, a public company like ClearOne may be subject to fines, penalties, legal and administrative actions by the SEC, lawsuits from shareholders, and de-listing of ClearOne from the NASDAQ stock exchange ("Audit Related Consequences").

10.      Any one of or a combination of the Audit Related Consequences could lead to a loss of investor confidence; loss of customer and vendor relationships; an adverse effect on employee compensation, retention, and recruitment; the sell-off of ClearOne's stock; and, ultimately, the destruction of the company.

11.      Because of ClearOne's growth, including its expansion into international markets, beginning in or around the first quarter of 2012, ClearOne began soliciting and interviewing new auditors for the company.

12.      Among other things, ClearOne was particularly interested in retaining a large, international, and reputable firm, which had the skills and experience to handle ClearOne's expanding international business.

13.      As of 2012, ClearOne's products were sold around the world; ClearOne had employees and consultants working in the United States, the United Kingdom, the Netherlands, Italy, Israel, Malaysia, China, Hong Kong, and South Korea; and ClearOne was conducting business through active subsidiaries in Hong Kong and Israel.

14.     Among other things, ClearOne was also particularly interested in retaining a firm that could handle ClearOne's anticipated need for expanded audit services that would be necessary as ClearOne approached and crossed the $75 million market capitalization threshold (the "Expanded Audit Requirements"), triggering additional SEC regulatory reporting requirements.

15.     Accordingly, ClearOne solicited proposals from multiple accounting firms, including RSM, in the first half of 2012.

**RSM's Representations as to Its Competence and Expertise**

16.     In response to ClearOne's request for proposals, RSM made a number of representations to ClearOne regarding its competence and expertise as a full-service accounting firm, with expertise in international tax matters.

17.     Among other things, RSM represented and represents itself as a leading provider of audit, tax, and consulting services, employing approximately 8,000 professionals and associates in 80 cities nationwide, with access to more than 37,500 professionals in more than 730 offices in more than 120 countries through its membership in RSM International, the seventh largest global network of independent accounting, tax, and consulting firms.

18.     As another example, RSM represented that its "tax team will quickly obtain a technical understanding of the tax positions that have been taken in the many countries in which ClearOne operates."

19.     RSM acknowledged that ClearOne "require[d]" audit and tax services to "compete in a global economy," and that – among other things – the professionals that

would be assigned to ClearOne's account had experience "serving multinational

technology companies."

20.    RSM represented that it supported clients' "global services needs through

our membership in RSM International (RSMI), the sixth largest worldwide organization

of separate and independent accounting and consulting firms."

21.    RSM further touted its international expertise – and particularly its "one

point of contact" management of ClearOne's needs:

> Our international office will play a key role in our work for ClearOne, supporting the other members of our team throughout the world. In working with McGladrey and other RSMI affiliate firms, ClearOne will have one point of contact who will manage the provision of your services. Once the foreign relationships are in place, you can rely on your international services coordinator to keep you informed about all aspects of the work and ensure universal coordination and information sharing.

22.    RSM also represented itself as "[o]ne of the leading accounting and

consulting firms in Hong Kong."

23.    Indeed, in 2012 and as part of its solicitation of ClearOne's business, RSM

represented to ClearOne that its "Hong Kong practice" could "provide all the services

[ClearOne's] current firm does."

### ClearOne Retains RSM as its Public Auditor

24.    After careful consideration, and based upon RSM's representations as to

its skill, expertise, and international capability, ClearOne retained RSM as the

company's independent public accounting firm in June 2012.

25.    Between June 2012 and RSM's abrupt resignation in October 2015,

ClearOne paid RSM hundreds of thousands of dollars for its professional services.

**RSM's Duty to Ensure It is Not Disqualified from Providing Audit Services**

26.     As ClearOne's auditor, RSM owed a number of contractual and independent duties to ClearOne (the "RSM Duties"), including to conduct its audits in accordance with Generally Accepted Accounting Principles ("GAAP"), Generally Accepted Auditing Standards ("GAAS"), and other binding industry standards, such as those established by the Public Company Accounting Oversight Board ("PCAOB") (collectively, the "Binding Industry Standards").

27.     RSM committed to conduct its audits in accordance with the Binding Industry Standards, which establish, among other things, an auditor's duty of care, including the bedrock principle that an auditor is at all time to be independent and to maintain its independence in fact and appearance (the "Independence Duty").

28.     In particular, the SEC "will not recognize an accountant as independent, with respect to an audit client, if the accountant is not, or a reasonable investor with knowledge of all relevant facts and circumstances would conclude that the accountant is not, capable of exercising objective and impartial judgment on all issues encompassed within the accountant's engagement."  17 CFR § 210.2-01(b).

29.     As such, independent public auditors like RSM have a duty to know and understand the rules, regulations and requirements relating to whether the auditor is "independent."

30.     Further, when auditing clients with global operations and foreign subsidiaries, such as ClearOne, for United States reporting requirements, auditors must comply with the Binding Industry Standards even with respect to foreign subsidiaries.

31.     Upon information and belief, prior to 2012 and continuing through October 2015, RSM knew and understood the rules, regulations and requirements relating to whether RSM was "independent," as it related to RSM's work for ClearOne.

32.     Among the RSM Duties, RSM had a duty to establish and follow internal controls, protocols and/or procedures to insure that as a result of work done in different offices and countries, RSM does not undertake work for a client which threatens RSM's qualification as "independent" (the "Internal Controls Duty").

33.     Among the RSM Duties, RSM had a duty to ensure that it is, and continues to be, qualified to perform the services for an audit client such as ClearOne, including by ensuring its continued independence from that client, by performing customary, periodic, and appropriate conflict checks prior to undertaking any work for a client that might threaten RSM's status as "independent," and to decline to undertake any such work (the "Conflict Check Duty").

34.     Among the RSM Duties, RSM had a duty to timely discover any potential conflicts related to RSM's independence, and to provide immediate notice to ClearOne of any facts or circumstances calling RSM's qualifications into question (the "Timely Notice Duty").

35.     Among other reasons for the above-described duties, if a public auditor like RSM is determined to have lost its independence, that auditor may be required to withdraw as the auditor for the public company client, triggering any and all of the Audit Related Consequences.

36.     Here, RSM breached its duty of care by violating the independence requirement with respect to ClearOne.

37.     Prior to being engaged by ClearOne to audit its financials for the year ending December 31, 2014, and other interim financial reports in 2015, affiliates of RSM had performed services for a foreign ClearOne subsidiary in violation of applicable independence standards, and did so without disclosing that performing such services would compromise RSM's independence and preclude reliance on RSM's audit opinions.

38.     Moreover, RSM did not timely disclosure its failure to attain and maintain its independence to ClearOne.

**RSM Solicits and Performs Work for ClearOne in Hong Kong**

39.     Specifically, beginning in 2014, an RSM affiliate in Hong Kong, RSM Nelson Wheeler, provided to ClearOne's Hong Kong subsidiary certain accounting and consulting services, including representing ClearOne's Hong Kong subsidiary with an income-tax related issues (the "Tax Representation").

40.     The Tax Representation work, which resulted in fees of approximately $2,000, was *de minimis*, unrelated to the audit work being performed by RSM for ClearOne.

41.     RSM and RSM Nelson Wheeler undertook the work for ClearOne's Hong Kong subsidiary without advising ClearOne that the work might or would threaten RSM's "independence" with respect to RSM's audit under the Binding Industry Standards.

8

42.     After the Tax Representation, RSM continued as ClearOne's public auditor, and charged ClearOne hundreds of thousands of dollars for its services.

**RSM Expressly Represented That It Was Independent, and Failed to Disclose That It Was Under Investigation by the SEC for Similar Independence Violations**

43.     On February 2, 2015, and prior to incurring hundreds of thousands of dollars to complete the audit of ClearOne's financials ending December 31, 2014, as well as interim financial reports in 2015, RSM expressly represented to ClearOne that, as of that date, RSM was "independent with respect to the Company in compliance with PCAOB Rule 3520," in addition to the "independence criteria set out in the rules and regulations of the SEC under the federal securities laws."

44.     In determining its independent status, RSM expressly acknowledged that it had considered the work done by RSM Nelson Wheeler in Hong Kong, which RSM also acknowledged "provide[d] tax compliance services and certain tax advisory services for the Company's foreign subsidiaries in these countries," and that these services "were preapproved."

45.     Furthermore, RSM did not disclose to ClearOne that it was under SEC investigation at that time for independence violations with other clients.

46.     ClearOne relied on RSM's representations of independence, and non-disclosure of independence issues for performing similar activities for other clients, in moving forward with its engagement of RSM to perform the audit of ClearOne's financials ending December 31, 2014, as well as interim financial reports in 2015, paying RSM hundreds of thousands of dollars for its services.

47.     Accordingly, RSM and ClearOne executed contractual agreements to govern the work to be performed by RSM, including letters from RSM's Mel Hudson to Scott Huntsman, Chairman of the Audit Committee for ClearOne, on April 15, 2014, and April 28, 2015 (collectively, the "Agreements").

48.     Under the Agreements, RSM's auditing services were to be performed in accordance with PCAOB standards.

**ClearOne's Expanded Audit Requirements for 2015**

49.     In 2015, it became apparent to ClearOne and RSM that growth in ClearOne's stock price and market capitalization would trigger the need for the Expanded Audit Requirements by the Fall of 2015.

50.     Because RSM had been communicating with ClearOne related to planning for the Expanded Audit Requirements, it was aware of these new requirements, and the attendant pressures on ClearOne's resources.

51.     In 2015, including into the Fall of 2015, RSM continued to provided ClearOne with audit services.

**RSM's Untimely and Abrupt Resignation**

52.     On or about October 8, 2015, RSM abruptly and without warning resigned as the independent registered public accounting firm for ClearOne.

53.     In conjunction with its resignation, RSM withdrew its audit report of ClearOne's financial statements for the previous year ended December 31, 2014, as well as all interim reports issued by RSM in 2015.

54.     In its resignation letter, RSM claimed that its independence had been impaired due because "an associated entity of McGladrey LLP has provided certain prohibited non-audit services to an international subsidiary of ClearOne," a reference to the Tax Representation provided by RSM Nelson Wheeler in 2014.

55.     RSM's failure to identify the potential threat to its independence and the abrupt resignation constitute a breach of RSM's contractual, ethical, and other duties to ClearOne, including the Internal Controls Duty, the Conflict Check Duty, and the Timely Notice Duty.

**ClearOne Is Damaged**

56.     RSM's abrupt withdrawal as ClearOne's independent public auditor, and its withdrawal of its previously issued financial reports, rendered valueless to ClearOne all of the work done by RSM in relation to "to the Company's consolidated financial statements for the year ended December 31, 2014, the completed interim reviews for the periods ended March 31, 2015 and June 30, 2015, and the work that was being performed by RSM for ClearOne's next set of public disclosures, including the work to meet the Expanded Audit Requirements.

57.     As a result of RSM's abrupt resignation, among other issues, ClearOne was faced with its securities registration statements becoming invalid, which prohibited ClearOne from being able to publicly issue any new stock or debt or permit any employees or a director to exercise any stock options.

58.     ClearOne was forced to expend last-minute resources to attempt to obtain an exemption from the SEC that would alleviate and/or minimize the consequences of

the invalidation of ClearOne's registration statements as the result of RSM's misconduct, which effort was not successful.

59.    Accordingly, among other things, ClearOne was forced to take a series of actions to attempt to control the damage caused by RSM's abrupt resignation, including multiple conversations with, and issuance of press releases to address, concerned investors.

60.    ClearOne also had to face the negative publicity of NASDAQ threatening to delist ClearOne for having its audit reports withdrawn.

61.    ClearOne had to rush to appoint new auditors to get the audit for 2014 and reviews for the first two quarters of 2015 redone to ensure that the registration statements become valid again and its publically-listed common shares were not delisted.

62.    ClearOne's inability to issue common shares to employees desiring to exercise their stock options required additional efforts and expenditure of substantial time and resources by the company to maintain the morale and confidence of ClearOne's employees.

63.    In sum, RSM's abrupt resignation exposed ClearOne to full range of injuries and Audit Related Consequences.

64.    Indeed, but-for ClearOne's strong balance sheet, along with the hard work, diligence, and expenditure of substantial time and resources by ClearOne's executive management and Board of Directors, RSM's wrongdoing could have destroyed the company.

65.     The timing of RSM's abrupt resignation was even more devastating because ClearOne had been preparing to address the Expanded Audit Requirements, as required by SEC regulations, for the first time in the company's history, and thus ClearOne was at a critical juncture as a public company.

66.     ClearOne was therefore forced to dedicate a massive amount of financial and other resources to conduct damage control, including to solicit, interview and retain a replacement independent public auditor --- on the heels of such a sudden and inexplicable resignation -- to not only re-do the work for the previously issued reports, but also to prepare for ClearOne's next quarterly report with the Expanded Audit Requirements.

67.     Accordingly, in addition to losing the value of the hundreds of thousands of dollars that ClearOne had already paid to RSM, ClearOne incurred hundreds of thousands of dollars in professional fees, including attorney and accounting fees, as well as personnel and other company resources.

68.     In addition, ClearOne management was forced to spend inordinate and unexpected amounts of time addressing the myriad of negative consequences created by RSM's abrupt withdrawal.

69.     In addition, ClearOne suffered injury to its reputation with shareholders, employees, vendors, and customers.

70.     Finally, ClearOne's reputation in the eyes of existing and potential investors was negatively affected, or at least endangered, by RSM's abrupt distancing from ClearOne and apparent disclaimer of its previous reports.

**FIRST CLAIM FOR RELIEF**
**(Professional Negligence)**

71.     ClearOne incorporates the preceding paragraphs by reference.

72.     RSM held itself out as a professional Certified Public Accounting firm competent to provide independent auditing services to ClearOne.

73.     ClearOne relied on RSM's specialized experience in auditing, including RSM's knowledge as to the laws and regulations pertaining to its qualification and independence.

74.     RSM owed a duty of care to ClearOne to perform its services with the same amount of care that would be exercised by a reasonable independent registered public accountant in the same position as RSM, including as set forth in the Binding Industry Standards.

75.     RSM's conduct, including its failure to perform customary, periodic, and appropriate conflict checks prior to incurring substantial fees for work performed, and its failure to provide timely notice to ClearOne of a potential conflict impairing its qualification, was not reasonable by the standards of RSM's profession, and constitute breaches of the duty of care owed by RSM to ClearOne.

76.     Accordingly, RSM committed professional malpractice and breached its duty of care when it failed to conduct auditing procedures in accordance with the Binding Industry Standards, including by providing auditing services to ClearOne despite RSM's lack of independence.

77.     As a direct and proximate result of these breaches, ClearOne has been damaged in an amount to be determined at trial.

14

78.     RSM's conduct was and is willful or malicious, or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and disregard of, ClearOne's rights; thus, ClearOne is entitled to an award of punitive damages against RSM under UTAH CODE § 78B-8-201.

## SECOND CLAIM FOR RELIEF
### (Breach of the Contract)

79.     ClearOne incorporates the preceding paragraphs by reference.

80.     ClearOne and RSM entered into valid and binding Agreements for auditing services.

81.     The Agreements required that RSM provide auditing services in exchange for payment from ClearOne.

82.     ClearOne fulfilled all of its contractual duties under the Agreements, including by providing all requested information and fully compensating RSM for its services.

83.     RSM breached its contractual duties by failing to provide services in accordance with the Binding Industry Standards.

84.     ClearOne has suffered damages as a result of RSM's breach of contract in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF
### (Breach of the Covenant of Good Faith and Fair Dealing)

85.     ClearOne incorporates the preceding paragraphs by reference.

86.     The Agreements constitute binding and enforceable contracts between ClearOne and RSM.

87.     ClearOne has performed all of its obligations and conditions precedent to the Agreements.

88.     RSM impliedly promised it would not intentionally or purposefully do anything which would destroy or injure ClearOne's right to receive the fruits of the Agreements.

89.     RSM's conduct, including its failure to perform customary, periodic, and appropriate conflict checks prior to incurring substantial fees for work performed, and to provide timely notice to ClearOne of a potential conflict impairing its qualification, is inconsistent with the agreed common purpose of the Agreements with ClearOne, and ClearOne's justified expectations.

90.     RSM's actions were not consistent with the Agreements' agreed upon common purpose, and ClearOne's justified expectations arising from the Agreements between the parties.

91.     RSM's actions constitute substantial and material breaches of the covenant of good faith and fair dealing to ClearOne.

92.     As a direct and proximate result of the breaches of the covenant of good faith and fair dealing, ClearOne has been damaged in an amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF
### (Fraudulent Misrepresentation)

93.     ClearOne incorporates the preceding paragraphs by reference.

94.     RSM made representations to ClearOne which include, but are not limited to, representations that RSM was independent as of February 2, 2015.

95.    RSM's representations were material; false at the time they were made or made recklessly, knowing that there was insufficient knowledge upon which to base such representations; and for the purpose of inducing ClearOne to act.

96.    ClearOne, acting in reasonable reliance upon RSM's fraudulent representations and in ignorance of their falsity, did in fact rely upon these false representations to ClearOne's detriment, including as alleged above.

97.    As a direct and proximate result of RSM's fraudulent misrepresentations, ClearOne has been damaged and are therefore entitled to a judgment for damages against RSM in an amount to be determined at trial.

98.    RSM's conduct was willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and disregard of, the rights of ClearOne, entitling ClearOne to an award of punitive damages against RSM under Utah Code Ann. § 78B-8-201.

### FIFTH CLAIM FOR RELIEF
### (Fraudulent Non-Disclosure)

99.    ClearOne incorporates the preceding paragraphs by reference.

100.    RSM owed a duty to ClearOne to communicate and disclose to ClearOne material facts, including, but not limited to, the effect of the work of RSM Nelson Wheeler on RSM's independence and the SEC investigation into RSM for similar independence issues with other clients, by virtue of RSM's relationship with ClearOne, the trust and confidence placed in RSM by ClearOne, and RSM's superior knowledge of the relevant facts and circumstances.

101.    RSM intentionally did not disclose to, and concealed from, ClearOne material information, including that RSM's representations as to its independence were false, RSM's non-disclosure of similar independence issues with other clients, and additional unlawful nondisclosures and concealments which have yet to be discovered.

102.    RSM had knowledge of the material information and had the opportunity to disclose it to ClearOne.  Had the information been disclosed to ClearOne, it would have materially impacted ClearOne's relationship with and decisions regarding RSM, and ClearOne would not have been damaged to the same extent.

103.    As a direct result of RSM's fraudulent concealment and omissions, ClearOne has been damaged and is therefore entitled to a judgment for damages against RSM in an amount to be determined at trial.

104.    RSM's conduct was willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and disregard of, the rights of ClearOne, entitling ClearOne to an award of punitive damages against RSM under Utah Code Ann. § 78B-8-201

### SIXTH CLAIM FOR RELIEF
#### (Estoppel)

105.    ClearOne incorporates the preceding paragraphs by reference.

106.    ClearOne acted with prudence and in reasonable reliance on RSM's representation that it was qualified to perform the work set forth in the Agreements.

107.    RSM knew that ClearOne had relied on RSM's representation that it was qualified to perform the work set forth in the Agreements, which RSM should reasonably have expected to induce action or forbearance on the part of ClearOne.

108.     RSM was or should have been aware of all material facts related to its qualification to perform the work set forth in the Agreements.

109.     ClearOne in fact relied on RSM's representation that it was qualified to perform the work set forth in the Agreements, and that reliance resulted in a loss to ClearOne.

## SEVENTH CAUSE OF ACTION
### (Unjust Enrichment)

110.     ClearOne incorporates the preceding paragraphs by reference.

111.     ClearOne conferred a benefit on RSM, including when it paid RSM for work which RSM now claims it was unqualified to perform, and RSM appreciated or had knowledge of that benefit.

112.     Under the circumstances, the acceptance or retention of the benefit by RSM is such that it would be inequitable for RSM to retain the benefit without payment of ClearOne of its value.

113.     Accordingly, ClearOne should be awarded the value of the benefit.

**WHEREFORE**, ClearOne respectfully prays for the following relief:

1.     For judgment on each cause of action as requested, and an award of interest, costs, and attorney fees as allowed by law, to be determined after trial, but believed to be in excess of $300,000.

2.     For such other relief as this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, ClearOne demands a trial by jury on all issues so triable.

DATED this 28th day of June, 2016.

MAGLEBY CATAXINOS & GREENWOOD

James E. Magleby
Jennifer Fraser Parrish

Attorneys for Plaintiff ClearOne, Inc.

Plaintiff's Address:
ClearOne, Inc.
5225 Wiley Post Way, Suite 500
Salt Lake City, UT 84116